[No. 11981.   Department Two.   July 7, 1914.]

LEE BERRYMAN *et al.*, *Appellants*, v. EAST HOQUIAM BOOM AND LOGGING COMPANY, *Respondent*.[1]

NEGLIGENCE — DANGEROUS AGENCIES — SPLASH DAM — WARNING — EVIDENCE—SUFFICIENCY.   Where the release of a splash dam sent the water down the stream at the rate of eight or nine miles per hour, and created a rise at a dry ford of about one foot per hour for four hours, the dam is not such a dangerous agency as to require warning to one who might be in or near the river at the ford, especially if such person had knowledge of the approximate time and character of the splashes; hence it was not actionable negligence to fail to give warning of a splash.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered September 12, 1913, dismissing an action in tort, on granting a nonsuit.   Affirmed.

*Govnor Teats, Leo Teats, Ralph Teats,* and *Chas. W. Smith,* for appellants.

*W. H. Abel,* for respondent.

MOUNT, J.—The plaintiffs brought this action to recover damages on account of personal injuries to Mrs. Berryman by reason of the alleged negligence of the defendant.   On the trial of the cause the court sustained the defendant's motion for nonsuit on the ground that no actionable negligence was shown.   The plaintiffs have appealed from the order dismissing the action.

It appears that the plaintiffs own an eighty-acre tract of land, upon the East Hoquiam river.   This river runs through the plaintiffs' land.   About four miles above the plaintiffs' land, the defendant has operated a splash dam for more than twenty years.   This splash dam is approximately thirty-eight feet high, and contains three gates, each being about eleven feet wide.   When the water above the dam is raised a certain distance, the gates open automatically and allow

[1]Reported in 141 Pac. 765.

the water which has accumulated above the dam to flow down the stream. This is called a splash, and is used for the purpose of floating logs down the stream. These splashes occur every three or four days.

Mr. and Mrs. Berryman live on one side of the river and have a pasture upon the opposite side. Their house is close to the river's bank. The river at the point near the house is nearly dry in the summertime when the water is being retained in the dam. One can walk across without getting wet. There is a roadway across the river at this point which is called a ford. The distance between the banks at this point is about two hundred feet. Standing on the bank at or near the ford, a person can look up the river a distance of two or three hundred feet. When a splash is coming, one can hear it when it gets within four or five hundred feet. The evidence varies as to the rate the water runs during a splash. Some of the witnesses testified that it runs between eight and nine miles per hour. These witnesses, however, had not measured the rate of speed of the water. One witness testified that he had measured it, and the water ran thirty-nine feet in half a minute, which, of course, is much less than a mile an hour. It is not clear from the testimony of this witness whether he measured the speed of the water when it was running at its greatest speed, or whether he measured it at ordinary water. But we may assume, for the purposes of this case, that the water ran at about the rate of eight or nine miles per hour. The evidence also shows that, when these splashes were running, the water rose within the banks of the river at this ford three or four feet in about four hours time.

On the 20th day of July, 1912, in the evening, Mrs. Berryman went over to the pasture to drive some cows home. She took her baby, who was a little over two years old, down near the ford and left it there. She crossed the river bed, in which there was very little water, and started one of her cows across toward home. She was about thirty feet from the crossing when she heard the roar of the water coming down

the river. She immediately thought of her baby on the opposite side and, instead of going back to the ford, she jumped over a bank about nine feet high, and was injured. Mr. and Mrs. Berryman had lived at this place for a period of about four years. They of course knew the character of the splashes that were being made, the volume of water which would come down the river, and approximately when the splashes would occur. Mr. Berryman, a year or so prior to the time of the accident, had requested the defendant company to put in a telephone at his house so that he might be notified when the splashes would occur; but the defendant company refused this request.

It is argued by the appellants that the respondent was negligent in not notifying the appellants when a splash was about to occur, and that these splashes were dangerous to persons and stock which might be in or about the river when the splash came. It is true, these splashes were due at irregular intervals, depending, no doubt, upon the amount of water in the stream. And it is true that the appellants had a right to be crossing the river with stock or by themselves. But we are satisfied that these splashes, even though they occurred at irregular intervals, and when occurring the water rushed down the river at a rate of eight or nine miles per hour, did not constitute a dangerous agency. The evidence shows that, even though the water ran at the rate of eight or nine miles per hour, it did not come down the stream in a solid mass, but came down gradually, attaining its greatest depth in about three or four hours' time. It was not dangerous because the oncoming of the water could be heard for a distance of three or four hundred feet before it reached a given point, and then rose gradually from practically no water until it became three or four feet deep. The appellants knew these facts from an experience of at least four years' observance thereof. If one were in the river when a splash was coming, there was ample time for escape. If one was across the river, as Mrs. Berryman was, there was ample

time to get back before the waters became dangerous. There were no logs in the waters as they passed the Berryman place. The evidence shows that the logs were all placed in the river bed below their place at the time of the accident.

Ordinarily it would not be supposed that the accident which happened in this case would be likely to take place. Mrs. Berryman left her infant child on the bank of the river near the ford, and crossed over to the pasture on the opposite side. When she heard the water coming, she evidently thought of her child, but instead of going back to the ford, which was but thirty feet away, she jumped over a bank about nine feet high, and sustained the injuries complained of. The water from the splash dam did not cause her injury, but it was caused, according to her own testimony, by jumping over the bank.

The cases relied upon by the appellants are not in point. The use of giant powder is clearly a dangerous agency. A railroad train at a crossing running at a high rate of speed is also a dangerous agency. It is the duty of persons using such dangerous agencies to warn people who may be in jeopardy. But where water is running down a stream at the rate of eight or nine miles per hour, and rises at the rate of about one foot per hour, this is not such a dangerous agency as requires a warning to one who may be in or near the river at about the time these splashes occur. In view of the fact that the appellants had knowledge of the approximate time and character of the  splashes, they were not, as a matter of law, entitled to special notice when such splashes were about to occur. We are of the opinion, therefore, that the court properly ruled that there was no negligence shown on the part of the respondent.

The judgment is therefore affirmed.

CROW, C. J., PARKER, MORRIS, and FULLERTON, JJ., concur.